# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 03-2217

---

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Craig David McCart, | * | CR 02-194 PAM/RLE |
| | * | |
| Appellee. | * | |

---

Submitted: February 12, 2004
Filed: July 27, 2004

---

Before BYE, HEANEY, and SMITH, Circuit Judges.

---

SMITH, Circuit Judge.

A jury convicted Craig David McCart of interstate travel with the intent to engage in a sexual act with a minor in violation of 18 U.S.C. § 2423(b). Prior to sentencing, McCart moved for downward departure pursuant to sections 5K2.0, 5K2.12 and 5K2.13 of the United States Sentencing Guidelines ("U.S.S.G."). The district court granted McCart's motion to depart downward after finding that McCart lacked a criminal history, was unlikely to reoffend, and suffered from diminished capacity. The court also granted departure based upon a convergence of these factors

SCANNED
JAN 28 2005
U.S. DISTRICT COURT ST. PAUL

that took the case outside the heartland of similar cases.[1] The government appeals the district court's downward departure, which resulted in a sentence of twenty-six months' imprisonment instead of one within the Guidelines-specified range of forty-six to fifty-seven months' imprisonment. We reverse and remand for resentencing.

I. *Background*

On May 31, 2002, McCart drove from Sioux Falls, South Dakota, to Columbia Heights, Minnesota, to meet and engage in a sexual act with a person he believed to be a thirteen-year-old female named "Suzie." However, instead of meeting "Suzie," McCart was greeted by Federal Bureau of Investigations agents who arrested McCart upon his arrival at the prearranged location. Following indictment, McCart was tried and convicted by a jury. The post-trial Presentence Investigation Report ("PSR") listed McCart's total offense level at twenty-three with a criminal history category of I. As such, McCart's applicable Guideline range was forty-six to fifty-seven months' imprisonment.

Prior to sentencing, McCart moved for downward departure pursuant to U.S.S.G. §§ 5K2.0, 5K2.12 and 5K2.13. McCart sought a downward departure under § 5K2.0 on the grounds that he had no criminal history and was unlikely to repeat the offense. He also argued that a downward departure was warranted due to his diminished capacity pursuant to § 5K2.13.[2] In addition, McCart alleged that the

---

[1] The district court denied the request for downward departure on the grounds of coercion.

[2] Prior to trial, Dr. John Patrick Cronin, a psychologist with the Primary Behavioral Health Clinics in Minneapolis, Minnesota, examined McCart. Dr. Cronin determined that McCart suffered from low self-esteem, clinical depression marked with manic episodes to mask a pronounced sense of loneliness, depressed generalized anxiety disorder, and identity problems. Dr. Cronin also opined that McCart would behave in any manner to gain acceptance, especially from women. Dr. Cronin diagnosed McCart with mixed expressive language disorder, generalized anxiety

government's coercive conduct justified a departure under § 5K2.12. Finally, he requested a downward departure under § 5K2.0 asserting that a convergence of factors took his case outside the heartland of similar cases contemplated by the Sentencing Guidelines.

At the April 4, 2003, sentencing hearing, the district court explained the downward departure, stating:

> This becomes kind of a cumulative thing, truthfully, when we look at downward departure here. I do look at the essence of the criminal records and I do look at the lack of likelihood of recidivism because I think this case is really completely out of the heartland subject in which we're dealing, is certainly an area of grave concern to society, and it's certainly in the area of grave concern because of the recidivism issue. The Court genuinely believes, in your situation, that the likelihood of that is substantially reduced.
>
> * * *
>
> Secondly, the issue of diminished capacity is very much in the Court's mind in this particular circumstance. I'm a little at a loss in this case and understand some things, and the obviousness of diminished capacity is one of the most glaring examples in your case that I've ever seen, and the Court just accepts it and goes from there.
>
> * * *
>
> And then finally the whole cumulative of circumstances in this case comes into play. This is an extremely unique case.

In conclusion, the district court summarized its position for imposing a sentence below the applicable Guidelines range, stating:

---

disorder, and identity problems.

> First, the Court considers the totality of the circumstances in this case, including Defendant's utter lack of prior criminal activity and the Court's belief that Defendant is not likely to commit another similar crime in the future. The Court also finds that Defendant was operating with diminished capacity when he committed the instant offense. These and the other circumstances of the case and Defendant's personal history combine to take this case out of the heartland of cases and merit a downward departure.

The district court entered judgment on April 7, 2003, and the government timely appealed on May 2, 2003.

## II. *Analysis*

Prior to the enactment of the Prosecutorial Remedies and Other Tools to the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21 § 401, 117 Stat. 650, 657 (2003), amending 18 U.S.C. § 3742(e) effective April 30, 2003, we would have reviewed the district court's downward departure under the abuse of discretion standard prescribed by *Koon v. United States*, 518 U.S. 81, 94 (1996). However, section 401(d) of the PROTECT Act now requires us to consider de novo if the factor upon which the district court based its departure "(i) does not advance the objectives set forth in section 3553(a)(2); (ii) is not authorized under section 3553(a)(2)[3]; or (iii) is not justified by the facts of the case." *United States v. Hutman*, 339 F.3d 773, 775 (8th Cir. 2003) (applying the PROTECT Act to a pending appeal); *United States v. Aguilar-Portillo*, 334 F.3d 744, 749–50 (8th Cir. 2003) (same); *United States v. Mejia*, 844 F.2d 209, 211 (5th Cir. 1988) ("A change in the standard of review is properly characterized as procedural rather than substantive [and therefore can be applied to a pending appeal without violating the Ex Post Facto

---

[3] A district court may depart from the Guidelines range only if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).

clause] because it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial.").[4]

Federal law requires a district court to sentence a defendant within the relevant Guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b) (2000). The Guidelines provide that "sentencing courts [are] to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch.1, Pt. A, 4(b), p.s. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* The district court is not left adrift, however, in determining which cases fall within and which cases fall outside of the "heartland." *Koon*, 518 U.S. at 94.

The Sentencing Commission has provided "considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure." *Id.* "If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account." *Id.* at 96. Where the factor is a discouraged factor or one already taken into account by the relevant Guideline, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* The

---

[4] McCart asserts in his response on appeal that Congress usurped the independence and power of the Judiciary when it modified the standard of review in sentencing departures under the PROTECT Act. However, because we would reverse the district court's decision whether we reviewed it under an abuse of discretion or a de novo standard of review, "we may assume without deciding that there is no legal barrier preventing Congress from changing the standard of review . . . ." *United States v. Dyck*, 334 F.3d 736, 739 (8th Cir. 2003).

Commission also has provided various forbidden factors that the district court may not use as a basis for departure. *Id.* at 95–96. Departures cannot be based on grounds explicitly precluded by the Guidelines. *See United States v. Dillard*, 975 F.2d 1554, 1555 (8th Cir. 1992) (§ 5K2.0 diminished capacity departure precluded by § 5K2.13 if violent offense is involved); *see also United States v. Petersen*, 276 F.3d 432, 436–37 (8th Cir. 2002) (same).

A. *Lack of Criminal History and Decreased Likelihood of Recidivism*

The government argues that the district court erred in granting the downward departure based on McCart's lack of criminal history and his decreased likelihood of recidivism. First, as to McCart's lack of criminal history, "we have squarely held that the lack of prior criminal history can never furnish the basis for a downward departure." *United States v. Sheridan*, 270 F.3d 669, 673 (8th Cir. 2001) (citing *United States v. Allery*, 175 F.3d 610, 614 (8th Cir. 1999)). This is so because the Guidelines have already set Criminal History Category I to accommodate a first-time offender. *Sheridan*, 270 F.3d at 673.

Second, regarding McCart's unlikelihood of recidivism, we have recognized that post-offense rehabilitation may, if it is sufficiently unusual, furnish grounds for downward departure. *Allery*, 175 F.3d at 614. However, Criminal History Category I also partly accounts for this factor, and therefore the reason for departure must be exceptional. *Sheridan*, 270 F.3d at 671. In this case, the district court did not specify any particular facts relevant to rehabilitation that make McCart's case "different from those of thousands of other offenders and thus cannot serve to take his case out of the heartland of those to which" the Guidelines apply. *Id.* Without reasons supporting departure on this ground, we cannot affirm the district court's downward departure. Accordingly, should the district court find reasons supporting departure based on a decreased likelihood of recidivism, the court should fully state those reasons on remand.

B. *Diminished Capacity*

Next, the government argues that the district court erred in finding that McCart suffered from diminished capacity. The government argues that the court failed to specify factors for a finding of diminished capacity, and the record does not support such a finding. McCart responds that Dr. Cronin's report alone supports a finding of diminished capacity.

Section 5K2.13 of the Sentencing Guidelines permits a downward departure when a defendant commits an offense "while suffering from a significantly reduced mental capacity" that "contributed substantially to the commission of the offense." Application Note 1 to § 5K2.13 provides:

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

In finding that McCart suffered from diminished capacity, the district court stated, "The obviousness of diminished capacity is one of the most glaring examples in your case that I've ever seen." However, the court did not state the basis for this conclusion.

In light of the relevant Guideline provisions, Dr. Cronin's report alone is insufficient in this case to support the finding of diminished capacity. Dr. Cronin diagnosed McCart as suffering from depression and anxiety as well as from an expressive and receptive language disorder due to hearing loss. However, Dr. Cronin did not suggest that these conditions impaired McCart's ability to understand the wrongfulness of his behavior or his ability to control behavior he knew was wrong. Although Dr. Cronin considered McCart to be very "vulnerable," the evidence shows

that McCart realized his wrongful conduct when he was arrested and, in fact, admitted his conduct to the police. Dr. Cronin stated, "Mr. McCart understands the nature of his offense but also recognizes the hopelessness and desperation that overwhelm his life and have become the cornerstone of his existence." Finally, a diagnosis of depression alone does not establish that the defendant suffered from a "significantly reduced mental state" as defined by section 5K2.13. *United States v. Greenfield*, 244 F.3d 158, 162 (D.C. Cir. 2001). As such, the record does not warrant a downward departure for diminished capacity. However, if the district court on remand states the basis for its conclusion–and the record on remand supports that conclusion–the court may impose any sentence consistent with applicable precedent.

C. *Aggregation of Factors*

Finally, the government argues that because the underlying individual findings cannot support a downward departure, the district court could not combine those factors to grant the departure. The Guidelines permit consideration of an aggregation of factors in determining whether a case is outside the heartland. *United States v. Simpson*, 7 F.3d 813, 820 (8th Cir. 1993). However, use of this type of departure is limited to an "extraordinary" case:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0, cmt. In order to depart on the basis of a combination of factors, a court must find that the combined circumstances differ significantly from the heartland "in a way that is important to the statutory purposes of sentencing." *United States v. Roberts*, 313 F.3d 1050, 1055 (8th Cir. 2002).

In reviewing a departure on the basis of a combination of circumstances, we must consider each factor identified by the sentencing court and the weight given to it. A factor which is specifically precluded under the Guidelines cannot be used to take a case out of the heartland, whether or not considered in combination with other factors. *Roberts*, 313 F.3d at 1055–56 (citing *United States v. Jones*, 158 F.3d 492, 497 (10th Cir. 1998)). If no factor is found to be exceptional, the aggregation can come to no more than a sum of its insufficient parts. *Id.* (citing *United States v. Gallegos*, 129 F.3d 1140, 1146 (10th Cir. 1997) (refusing to depart on combination of several individually insufficient factors)).

The aggregation approach used by the district court fails based on the factors the court specifically identified. The Sentencing Guidelines already account for McCart's lack of criminal history. The record contains nothing unusual about his recidivism potential either, and therefore cannot support a downward departure. In addition, because the record does not support the finding that McCart suffered from diminished capacity at the time of the commission of the crime, that factor is insufficient to bolster an "aggregation of factors" claim for downward departure.

Therefore, for the foregoing reasons, we reverse the district court's grant of a downward departure to McCart and remand for resentencing.

______________________________

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans