**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Criminal No. 02-194 (PAM/RLE)**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CRAIG DAVID McCART,

Defendant.

**DEFENDANT McCART'S SENTENCING MEMORANDUM AND POSITION PLEADING**

## INTRODUCTION

Defendant Craig David McCart submits this Sentencing Memorandum and Position Pleading in support of his request this Court affirm its prior sentence of twenty-six months. Given the unique circumstances of this case, Mr. McCart's reduced mental capacity, his acceptance of responsibility, and the absence of a prior criminal record, the Court's prior sentence was justified. On October 15, 2002, Craig McCart was found guilty of one count of violation of 18 U.S.C. § 2423(b). Prior to sentencing Mr. McCart moved for downward departure pursuant to sections 5K2.0, 5K2.12 and 5K2.13 of the United States Sentencing Guidelines (U.S.S.G). This Court granted Mr. McCart's motion to depart downward after finding he lacked a criminal history, was unlikely to reoffend, and suffered from diminished capacity. This Court also granted departure based upon a convergence of these factors that took the case outside the heartland of similar cases. Mr. McCart was sentenced to a term of confinement of twenty-six months. As a result, the government appealed this Court's decision to depart downward. On July

27, 2004, the Eighth Circuit reversed and remanded this Court's sentencing. On January 12, 2005, the Supreme Court decided United States v. Booker, U.S. , 125 S.Ct. 738 (2005), which found portions of the U.S.S.G. unconstitutional.

## BACKGROUND

Mr. McCart spent his childhood continually moving between his mother's first husband and his alcoholic father. His hearing loss was not diagnosed until a teacher in kindergarten recognized his problem. Frequent school changes followed, which, coupled with his unstable family life contributed to, what one of his sisters describe, as an inability to fit into any world. As an adult Mr. McCart's isolation continued, leaving his family as his only means of social interaction. Fortunately, Mr. McCart has three very supportive sisters, all of which reside in Sioux Falls; Mary Leinger, Pat Quinlivan, and Christine McCart.

In May of 2002 Mr. McCart began exchanging emails with Stephen Peterson and then later the FBI. Peterson was posing as a thirteen year old female looking to go on a date. It was Peterson's hope to use the Internet to convince men to travel to Minnesota to meet with the imaginary female and then turn them over to law enforcement agencies in order to secure favor in his own legal troubles. (Peterson has been convicted of Criminal Sexual Conduct and is currently under Minnesota State Supervision.) Through emails and chat room sessions, Peterson and the FBI convinced Mr. McCart to travel to Minnesota, were he was arrested on June 1, 2002. At time of his arrest Mr. McCart did not have a criminal record. He cooperated fully with the agents. He allowed immediate

access to his hotel room and offered a complete and truthful account of why he was in Minnesota. Mr. McCart admitted responsibility for what he knew were wrong actions.

Prior to trial, Dr. John Patrick Cronin performed an evaluation of Mr. McCart's mental health, which revealed a person with low self-esteem, clinical depression with bouts of manic episodes to compensate for a pronounced sense of loneliness, and depressed suicidal ideation. His diagnosis is mixed receptive expressive language disorder, generalized anxiety disorder, and identity problems.

Mr. McCart is scheduled to be released from Waseca FCI on March 17, 2005.

## ARGUMENT

### I. UNITED STATES V. BOOKER ALLOWS THIS COURT TO IMPOSE A NON-GUIDELINES SENTENCE IN MR. MCCART'S CASE.

In Justice Breyer's Opinion, the Supreme Court ruled that the implementation of Justice Stevens' Opinion required two sections of the U.S.S.G. be "sever[ed] and excise[d]." Booker, U.S. at , 125 S.Ct. at 764. These sections are 3553(b)(1), mandating the use of the Guidelines, and section 3742(e), which "sets forth standards of review on appeal." Id. Now that the duty to apply a Guideline sentence is not mandatory, this Court may impose a non-Guideline sentence as long as it is "reasonable".

### II. THE FACTS OF THIS CASE ARE UNUSUAL AND JUSTIFY THE COURT'S PRIOR SENTENCE.

The Eighth Circuit and this Court have recognized that if the defendant is unlikely to repeat the offense, the defendant may qualify for a downward departure. See United

States v. Big Crow, 898 F.2d 1326 (8th Cir. 1990); United States v. Floyd, 738 F. Supp. 1256 (D. Minn. 1990). In Floyd, using language closely paralleling the argument advanced herein, the Court stated: “There is a full year’s indication that defendant will continue her efforts to conform herself to society’s rules, that she will not violate any of the conditions of her supervised release, and that she will be a productive member of society.” Id. at 1259 n.5. This case is an instance where, like Floyd, this Court recognized Mr. McCart will conform to “society’s rules” and as a result exercised its discretion and departed downward in issuing its sentence. (Statement of Reasons for Imposing Sentence p. 2). The logic and public policy behind allowing the power to depart in this case are compelling. When it can be established that as a first time offender, who is not likely to repeat similar behavior, both the individual and the criminal justice system are helped by returning the offender to the support of his family as soon as possible. The case before this Court warrants all the lenience possible.

As this Court recognized at Mr. McCart’s first sentencing hearing, his mental state was a contributing factor to the commission of this offense and warranted a downward departure. (Statement of Reasons for Imposing Sentence p. 2). Mr. McCart’s expressive language disorder and generalized anxiety disorder combine to warrant a downward departure. Even the U.S.S.G. have recognized that “a sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity.” U.S.S.G. § 5K2.13. As the Eighth Circuit noted in United States v. Ruklick, 919 F.2d 95, 97-98 (8th Cir. 1990), a departure may be warranted where a defendant’s “diminished capacity comprised a contributing factor in the commission of the offense.” See also United States v.

McMurray, 833 F. Supp. 1454, 1480 (D. Neb. 1993)(finding McMurray's diminished mental capacity warranted a downward departure).

Here, there is little doubt that the unique circumstances of the present case warrant a departure. Dr. Cronin, a Licensed Psychologist with the Primary Behavioral Health Clinics concluded that Mr. McCart suffers and suffered-during the contacts with the "concerned citizen" and the F.B.I-from the mental disorder of clinical depression with bouts of manic episodes. Objective evidence of Mr. McCart's mental state was found through the administration of the Hopkins Symptom Checklist, Minnesota Multiphasic Personality Inventory, and the Beck Depression Inventory. Mr. McCart's DSM-IV diagnosis is:

315.31 Mixed Receptive Expressive Language Disorder
300.02 Generalized Anxiety Disorder
313.82 Identity Problem

While Mr. McCart's mental state cannot totally absolve him of his criminal conduct, it can be concluded that it did impact his decision making process during the events in questions. As Dr. Cronin noted in his summary and recommendations, hopelessness and desperation overwhelmed Mr. McCart's life, while that is certainly not a justification, it does shed some light on his interest "in finding some type of love and affection and acceptance from any female who will pay him the time of day."

In light of Mr. McCart's mental state the government's coercive conduct must also be considered. The government's participation in chat room and email communications that preceded Mr. McCart's conduct led to the presentation of an entrapment defense by Mr. McCart. While Mr. McCart's theory of entrapment was not accepted by the Jury, the government's conduct should be considered by this Court in

determining his sentence. In United States v. Garza-Juarez, 992 F.2d 896 (9th Cir. 1993), a government agent initiated an illegal activity and persisted for several months to persuade defendants to commit the offenses. The court affirmed that "[t]his sort of aggressive encouragement of wrongdoing, although not amounting to a complete defense, may be used as a departure," and noted that "threats of violence are not a prerequisite to application of guidelines in cases of 'imperfect entrapment.'" Garza-Juarez, 992 F.2d at 910-12 & n.2; See also United States v. McClelland, 72 F.3d 717, 725-26 (9th Cir. 1995)(affirming "imperfect entrapment" departure for defendant convicted in murder-for-hire attempt-although defendant initiated plan to kill his wife, he repeatedly expressed reluctance to proceed and only went forward after undercover informant that defendant had asked to do the killing "repeatedly pushed McClelland to go forward").

It is the convergence of Mr. McCart's mental state and the government's use of a convicted sexual offender that created a coercive environment that contributed to the commission of this offense. While Mr. McCart's entrapment defense was imperfect, a downward departure is still warranted, as the government's involvement contributed to the commission of this crime.

Finally, a convergence of factors justifies a downward departure in this case. The Eighth Circuit has recognized that factors warranting a departure in a particular case do not exist in isolation and may converge to make a departure justified. See United States v. Kapitzke, 130 F.3d 820, 822-24 (8th Cir. 1997); See also U.S.S.G. §5K2.0 Commentary (noting that a combination of an offender's characteristics or other circumstances may converge to take the case out of the heartland); Koon supra.

In the present case there are a multitude of factors that converge to take the case out of the heartland.

First, as set forth above, Mr. McCart suffers from clinical depression resulting in a diminished mental capacity.

Second, Mr. McCart has no previous criminal record and cooperated fully with the government at the time of his arrest.

Third, there was no victim in this case. "Suzie" was an adult male who was convicted of Criminal Sexual Conduct, received a 52-month prison sentence, and is currently under Minnesota State supervision.

Fourth, as set forth below, Mr. McCart took full acceptance and responsibility for his actions at the time of his arrest.

Fifth, Mr. McCart has significant family ties. He has three sisters, all of whom reside in Sioux Falls, South Dakota. Mr. McCart will have extended support, both monetarily and emotionally, upon his release.

Sixth, Mr. McCart is not likely to be a repeat offender.

Because of the unique circumstance of this case a downward departure is warranted and this Court should affirm its prior sentence.

## III. MR. MCCART ACCEPTED RESPONSIBILITY FOR HIS CONDUCT AND IS ENTITLED TO A REDUCTION PURSUANT TO § 3E1.1(A) OF THE FEDERAL SENTENCING GUIDELINES.

Mr. McCart has never denied the basic facts alleged in Count One of the Indictment. Following his arrest he acknowledged that he knew why the agents were there and he knew having sex with a thirteen year old was wrong. Further, he admitted to

bringing condoms with him to use with "Suzie". He then fully cooperated with the FBI, including allowing them to search his vehicle and hotel room and consenting to an interview. Mr. McCart went to trial to challenge Count One on the basis of entrapment, a defense this Court placed before the jury.

While a downward departure for acceptance of responsibility normally does not apply to a defendant who puts the government to its burden of proof at trial, there are exceptions.

> Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt *(e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).*

U.S.S.G. § 3E1.1 n. 2. (Emphasis added). In applying Note 2 courts have found a variety of defenses raised at trial do not preclude a defendant from receiving a reduction for acceptance of responsibility. In United States v. Broussard, 987 F.2d 215, 224 (5th Cir. 1993) the Fifth Circuit found it was an error to deny a reduction to a defendant who refused a plea agreement and went to trial to contest whether the law applied to his conduct. The Circuit Court stated, Mr. Broussard "went to trial to contend that § 924(c)(1) did not apply to [the] uncontested facts." Id. The court then went on to conclude, "This issue does not relate to factual guilt as that phrase is used in Application Note 2." Id.

In, United States v. Russell, 411 U.S. 423, 435 (1973), the Supreme Court found: "[entrapment] is rooted… in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense,

but was induced to commit them by the Government." see also United States v. Barris, 46 F.3d 33, 35 (8th Cir. 1995); see also Ronald J. Allen et al., *Constitutional Criminal Procedure*, 999 (3d ed. 1995)("Typically defendants claiming entrapment do not challenge the prosecutor's proof of the elements of the offense."); see also United States v. Garcia, 182 F.3d 1165 (10th Cir. 1999)(providing a detailed statutory interpretation analysis as related to a defense of entrapment and its compatibility with a sentence reduction). While the Eighth Circuit has yet to grant a sentence reduction where the defense of entrapment was presented at trial, the Court has not gone as far as to specify a per se rule against the granting of the reduction. See United States v. Chevre, 146 F.3d 622, 625 (8th Cir. 1998)(holding that Chevre's decision to present a defense of entrapment was dubious and it was clearly shown he did not accept responsibility for the crime of conviction); But see also Barris, 46 F.3d at 35 (citing the application notes and United States v. Fleener, 900 F.2d 914, 918 (6th Cir. 1990)(entrapment defense and reduction for acceptance of responsibility not necessarily incompatible).

Mr. McCart's primary defense at trial was the defense of entrapment. At no time during the trial did Mr. McCart recant what he told the FBI on June 1, 2002. Consequently, it is the pre-trial statements and actions of Mr. McCart that this Court must examine when it determines he has accepted responsibility for his actions. It is his statements to the FBI that he knew what he did was wrong, and it is his cooperation with the agents, his offering immediate access to his car, his hotel room, and even his home in South Dakota. And it is his continued cooperation with the FBI when he was questioned in their office in Minneapolis, where he freely explained his involvement in the offense that should be considered in determining Mr. McCart has accepted responsibility.

Mr. McCart presented a primary defense of entrapment at trial to challenge the applicability of a statute to his conduct. This challenge was appropriate, and does not preclude a sentence reduction.

**CONCLUSION**

Because of the unusual and mitigating circumstances of this case a downward departure is appropriate. This Court should affirm its prior sentence.

Respectfully submitted,

**PETER B. WOLD, P.A.**

Dated: February 17, 2005.

**s/ Peter B. Wold**
Peter B. Wold, ID #118382
Attorney for Defendant
247 Third Avenue South
Minneapolis, MN 55415
Phone: 612-341-2525
Fax: 612-341-0116